1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - -X
 UNITED STATES OF AMERICA,    : 98-CR-500(FB)
                             :
                             :
                             :
                             :
                             : United States Courthouse
     -against-               : Brooklyn, New York
                             :
                             :
                             :
                             : Wednesday, October 18, 2023
 RASENE MYTON,               : 11:00 a.m.
                             :
        Defendant.           :
                             :
- - - - - - - - - - - - - - -X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR RESENTENCING
BEFORE THE HONORABLE FREDERIC BLOCK
UNITED STATES SENIOR DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:    UNITED STATES ATTORNEY'S OFFICE
                       Eastern District of New York
                            271 Cadman Plaza East
                            Brooklyn, New York 11201
                       BY: DREW G. ROLLE, ESQ.
                            Assistant United States Attorney

For the Defendant:     FEDERAL DEFENDERS OF NEW YORK
                       For the Defendant -
                       Rasene Myton
                            One Pierrepont Plaza
                            16th Floor
                            Brooklyn, New York  11201
                       BY: MICHAEL K. SCHNEIDER, ESQ.

Court Reporter:   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
                  Official Court Reporter
                  Telephone: (718) 613-2487
                  Facsimile: (718) 613-2694
                  E-mail: Anthony_Frisolone@nyed.uscourts.gov

Proceedings recorded by computerized stenography.
Transcript produced by Computer-aided Transcription.

*Resentencing*                                                    2

1           (In open court.)

2           COURTROOM DEPUTY:  Criminal cause for

3    resentencing, United States v. Myton.

4           Counsel, please state your appearances.

5           MR. ROLLE:  Good afternoon, your Honor.  Drew

6    Rolle for the United States.

7           THE COURT:  Good afternoon.

8           MR. SCHNEIDER:  Federal Defenders by Michael

9    Schneider for Mr. Myton.

10          Good afternoon.

11          THE COURT:  So, Mr. Rolle, am I pronouncing your

12   name correctly?

13          MR. ROLLE:  Yes, your Honor.

14          THE COURT:  I don't think you were here when we

15   had this sentence back in 2005.

16          MR. ROLLE:  I think everybody on the dais was

17   here.  I don't know where I was.

18          THE COURT:  How long have you been with the office

19   now?

20          MR. ROLLE:  Since 2016.

21          THE COURT:  So you had to really familiar yourself

22   with Myton and Bernard and all those wonderful people.

23          MR. ROLLE:  Yes, I had his original -- his habeas

24   in 2016.

25          THE COURT:  Keep your voice up because my hearing

*Resentencing*                                                      3

1    is going.

2           MR. ROLLE:  I had his habeas since 2016, so I've

3    kept track.

4           THE COURT:  It's a long history here, obviously.

5    But I think that before we get into the niceties of

6    recalculating everything, it's a trial de novo.  It's a

7    sentence de novo.  So we want to talk a little bit about

8    some of the less important things and get them out of the

9    way first.

10          So de novo, if you take the word seriously, means

11   "from the beginning."  But we don't have to go all the way

12   back to the beginning because I think we could all agree

13   that there's certain parts that we don't have to be

14   concerned about:  No fine, we had a whole proceeding, we had

15   a whole sentence, we did not require restitution, and we did

16   require three years of supervised release.  And, of course,

17   there was a hundred dollar special assessment for each of

18   the seven which now should reduced to 500 and not 700.  I

19   don't know if he's paid any of that, but I think we can

20   possibly all agree that all of these things will still say

21   in place so we can go forward with what really is different

22   from the time we were sentenced.

23          Is that a fair assumption?

24          MR. ROLLE:  I think it generally, your Honor, the

25   normal sort of explanation as to the§3553(a) factors, all of

1  that will have to happen and the special assessment will go

2  to 500.

3              THE COURT:  Yes, I think those are the things that

4  have it be dealt with.  Really, we can agree that everything

5  else pretty much stays the way it was way back when.

6              MR. ROLLE:  I think it's certainly up to --

7              THE COURT:  Mr. Schneider?

8              MR. SCHNEIDER:  Yes, I will note that Mr. Myton

9  has paid the surcharge, the $700 surcharge.

10              THE COURT:  Pardon me.

11              MR. SCHNEIDER:  He has paid all the financial

12  penalties.

13              THE COURT:  Has he paid 700?

14              MR. SCHNEIDER:  Yes.

15              THE COURT:  So he gets a $200 refund, I guess.

16              MR. SCHNEIDER:  I don't know how that's going to

17  work.

18              THE COURT:  I don't know how that works out.  On a

19  prior case where I had this type of dynamic, there was a

20  restitution that was outstanding so we applied the so-called

21  "refund" to the restitution but we don't have that here.

22              So, Mr. Rolle, you're going to have to figure out

23  how he gets $200.

24              MR. ROLLE:  I'm not sure he's entitled to it, but

25  we'll look at it to the extent that restitution is a

1    question.  I understand from the record there was --

2    restitution was mandatory, there were funeral expenses for

3    the victim that the prosecutors at the time had the had

4    proffered.  And then, ultimately, for whatever reason, the

5    parties agreed not to impose it.

6              THE COURT:  I know that.

7              Anyway, look, you can just submit me some letter,

8    follow-up letter, has to how you folks agree or not agree on

9    the $200.  That's the least of the problems that we have

10   here, okay?  So is there a fair way to process that little

11   thing so we can get that out of the way?

12             MR. SCHNEIDER:  Yes.

13             THE COURT:  Okay.

14             Now, I'm here with a long history of Mr. Myton.

15   We've grown-up together to some extent.  We had the

16   underlying trial back in 2005, was it, 2004, thereabouts.

17             MR. SCHNEIDER:  2001 was the trial.

18             THE COURT:  2001.  So I was just on the bench for

19   about five or six years at that time.  And this was a case I

20   still remember, after all the passage of time, because we

21   had police officers who were part of this gang and it was a

22   pretty, pretty horrendous violent type of dynamic.  So I had

23   to refresh myself a little bit about this history that goes

24   back 20 years.  And, of course, Mr. Myton has not been

25   bashful about making all sorts of applications during the

*Resentencing* 6

1  course of his incarceration, and he is certainly entitled to

2  do that, and it has paid off because here we are today.

3  There is going to be a resentence because of the ultimate

4  decisions we got.  We waited a long time for the Supreme

5  Court and the Second Circuit to tell us that robbery is a

6  crime of violence, attempted robbery is not a crime of

7  violence.  And I think just a couple of weeks of weeks ago

8  they affirmed my decision in <u>Tavares</u> which said that

9  conspiracy is a crime of violence.

10       So we have this, sort of, combination of dynamics

11  here that have brought us here today.  I guess the question

12  that I want the Government to think about is that you were

13  not here for Bernard, who was the attorney who handled?

14       MR. ROLLE:  It was another AUSA with whom I've

15  spoken and reviewed the filings.

16       THE COURT:  I went over the minutes of that

17  proceeding that goes back in May and I gave him time served

18  which was about 21 years at that time.  So he's out and he

19  is the one that actual little pulled the trigger that

20  resulted in Davis's death.  I'm not absolutely still clear

21  that Myton was very much part and parcel of that even though

22  he wasn't the person who shot him and I spoke about that

23  throughout the years about his complicity.  But,

24  nonetheless, Kingsley Bernard, 21 years, time served.  He's

25  out, free man now at the anal of 48 or 49.  And how do you

1  deal with Myton when you have to think about comparative

2  sentencing for people similarly situated, I'm not so sure

3  they are.  But you're going to have to talk to me about that

4  because when you ask for 80 years and Kingsley was out after

5  20 years or 21 years, that's something which I cannot

6  accommodate, okay, right now.  You can talk more about them

7  and it's a serious matter, okay?

8           And Mr. Schneider, from your perspective, Kingsley

9  was an extraordinary rehabilitated prisoner.  And your

10 colleague Ms. Eisner-Grynberg did a terrific job and you had

11 a very good staff there that convinced me that time served

12 was appropriate there.

13          And primarily because of extraordinary

14 rehabilitation, he really rang the bell for what would have

15 otherwise possibly been yet another compassionate release

16 decision I would have rendered but not for the fact I didn't

17 have to go there considering the fact that we had to

18 eliminate the gun charges, right?

19          So how does Myton stack up compared to Kingsley

20 Bernard.  I don't think he stacks up to Kingsley Bernard at

21 all.  To some extent, yes, and a lot of ways, no.  I look at

22 him as really being so inextricably involved in long-term

23 horrendous acts of criminal behavior over a decade.  And he

24 was a major force in a lot of these crimes which are part of

25 his convictions which Kingsley Bernard was not part of.

*Resentencing*                                                    8

1  Kingsley did pull the trigger and your client did not pull

2  the trigger.

3          So these are the itinerant thoughts I want to

4  share with you before we even get through the recalculation,

5  so to speak, of the guidelines which is move of a technical

6  thing than it really is what really counts in terms of how

7  you treat a person at sentencing.

8          So these are preliminary comments.  A little

9  homework assignment for both of you to think about as we go

10 through the proceeding.  Having said that, let me identify

11 for the record what I have here.

12         And I assume, Mr. Schneider, that your client is

13 prepared to be resentenced today.

14         MR. SCHNEIDER:  Yes.

15         THE COURT:  All right.  In no necessary order, the

16 last thing I read is the Government's submission which I

17 received this morning.  It's dated October 18th and that's

18 where the Government is looking for 80 years, and so, ten

19 years offset because of the fact we can't count the

20 attempted robbery anymore is sufficient.  Well, you know my

21 thoughts about that.

22         Now, I'm a little bit late today because you

23 wanted me to read this, I take it.  So I had a conflict:  If

24 I read this, I would a little late in court.  If I didn't

25 read it, I would be here on time.

1            MR. ROLLE:  I appreciate it, your Honor.

2            THE COURT:  Okay.  So I know it's late in coming

3     but I appreciate what you did.  And it was really well done

4     because some times I don't agree with the 80 years because

5     it's not going to happen.  You did give me a good history of

6     the background of it.  You had to do a lot of work to really

7     get me so up to speed on this, I appreciate it.

8            MR. ROLLE:  Certainly, your Honor.

9            THE COURT:  Then, I go back to -- I have Kingsley

10    Bernard's amended judgment here going back to May 31st.  And

11    I pulled that out because I do think it should be part of

12    the sentencing files since it is very relevant to really

13    reflect upon it as I just mentioned.

14            So we have the underlying presentence report

15    which -- and the addendums to it -- which go back to

16    January 7, 2005.  And then we have the addendums to the

17    presentence report.  And I have an addendum dated

18    September 20, 2023.  Then I have a second addendum dated

19    October 18, 2023, which is today.  So I have reviewed all of

20    that and we're going to have to make revised calculations

21    based upon all of that.

22            Now, the underlying sentence that I imposed back

23    in 2005, I have that in my file.  I have the mandate from

24    the Second Circuit Court of Appeals.  And I got in my file

25    all the addenda going back to 2005.  I don't think I have to

1    spell it out specifically unless you want me to.  And I have

2    the -- and my decision and the circuit court's decision.  I

3    put that in the file as well.  I've got some letters that I

4    put in the file that go back to October 2, 2023.  This is

5    sort of printed to me and it's from Liston Watson, and so,

6    he we'll talk about him.  I think he's a correction officer

7    or -- I don't know what his position is but he speaks well

8    of Mr. Myton's so-called rehabilitation.  And I have the

9    sentencing recommendation of the probation department that

10   goes back to December 13, 2002.  So I have all the prior

11   papers as well.

12          Is there anything else that I should have in my

13   file here that may be would bear upon what we're going to be

14   doing today.  I think I got it pretty much done.

15          Mr. Schneider.

16          MR. SCHNEIDER:  No, your Honor.  I'm sorry, you

17   obviously have our submission of October 12th.

18          THE COURT:  Yes.

19          So let's now go through making the revised

20   sentencing calculations.  Look at the addendum of September

21   20, 2023.  And the second addendum, of course, tells us that

22   we should not count the Gross Jewelry Store robbery because

23   he was acquitted of that and that was a profound and

24   important change, and certainly, a relevant change to the

25   addendum which I'm going to talk about now.

1          So let's see whether we can turn to the

2    calculations and get that out of the way.  We know what it's

3    going to add up to.  Unless you want me to spend the next

4    20 minutes going through each of these in particular, there

5    are many of them because of the...

6          MR. ROLLE:  And I don't believe there is any

7    objection to any of the calculations that's set out in the

8    addendum.

9          THE COURT:  We wind up with the adjusted offense

10   level of 43.  We know it's going to be the case one way or

11   the other.

12         Mr. Schneider, what do you say?  Can we accept

13   that as the adjusted offense level?

14         MR. SCHNEIDER:  Yes.  Your Honor made that finding

15   at the original sentence that Mr. Myton was culpable for the

16   robbery that ended in the murder and, therefore, the

17   guideline level is 43.

18         THE COURT:  It is 43.  You know, I remember very

19   specifically it could be concerned way back when that he

20   wasn't the triggerman, but he was so inextricably involved

21   in planning it.  And I was particularly taken by the fact

22   that he was the one who dumped the body and planned to dump

23   then body, et cetera, et cetera.  I spoke about that in the

24   past.  Even though he was not the triggerman, as far as I'm

25   concerned, I can see him clearly coequal with Kingsley

1   Bernard in terms of the murder of Davis.  So that's 43.

2           I have in Paragraph 354 some disciplinary

3   incidents.  I don't think they're really anything major, I'm

4   not terribly concerned about that.

5           We have the second addendum as I mentioned dated

6   October 18th which accepts the defendant's counsel's

7   objections to Paragraph 354.

8           And the other paragraphs that you objected to.  So

9   I think the record reflects all you of that, right?

10          MR. SCHNEIDER:  Yes.  The only issue outstanding,

11  and I don't know that it's going to be relevant, is the

12  mandatory minimum that must be imposed on the remaining

13  §924(c) count.

14          THE COURT:  That's seven years compared to five

15  years?

16          MR. SCHNEIDER:  Right.

17          It's my position, and I think it's pretty much

18  black letter law, that since the brandishing was not charged

19  in the indictment, it's a five-year mandatory minimum.  But,

20  of course, that's just the minimum, the Court can impose a

21  sentence up to life on that count.

22          THE COURT:  I think the seven years is correct.

23  Look, he's going to get a big break here today.  Not going

24  to be what you want, not going to be what the Government

25  wants, but it's going to be a significant change in his

*Resentencing*                                                13

1   future.

2           But I think the seven years is right because I

3   think the brandishing relevant conduct.  I've considered

4   that and I think the fact that the gun was used to pistol

5   whip, or whatever that was, Leon, I think it was Leon Black.

6   Leon King?

7                MR. SCHNEIDER:  I don't recall that.

8                THE COURT:  One of the victims.

9                MR. ROLLE:  Ristolo.

10               THE COURT:  I went over that and I am satisfied he

11  really met standard of brandishing.  So I consider that as

12  relevant conduct even though it wasn't part of a particular

13  specific charge, okay?

14               MR. SCHNEIDER:  I think -- I don't argue with the

15  Court's reasoning.  My point is simply that the mandatory

16  minimum was five years.  The Court is certainly authorized

17  under the statute to impose seven.  It may be helpful to

18  make that finding should there be an appeal here.  That's my

19  only point.

20               THE COURT:  Keep your record, make your record.

21  It would not surprise me if we have more Myton papers to

22  deal with after today.

23               MR. ROLLE:  Your Honor, I think the judgment as to

24  that count is unchanged.

25               MR. SCHNEIDER:  No, that -- first of all, I'm not

1    sure that was the count that received -- no, it has to be

2    changed because the§924(c) counts received either a 5, a 20,

3    or a 25 year sentence at the time.

4             THE COURT:  It's either five or seven.

5             MR. SCHNEIDER:  So you would have change the

6    sentence no matter what.

7             THE COURT:  I think seven is right.  And you can

8    preserve your rights, of course, to an appeal.  I'm going to

9    tell him right now he has a right to appeal before I forget

10   it which I usually do and let me get that out the way.

11            So if he wants to do that, he'll have to file a

12   Notice of Appeal within 14 days from the date that the

13   judgment will be entered and have to perfect it within

14   30 days thereafter unless gets an extension of time from the

15   Second Circuit Court of Appeals, I suspect.

16            So we've taken care of that.

17            So what we have here is the 20-year cap on all of

18   these Hobbs Act robberies.  And that includes the one that

19   was involved with the death of Davis as well.  And so, what

20   it comes down to, I've had to deal with this before, is I

21   got the discretion to run them all concurrent which I don't

22   think I'm going to do but you can try to talk me into doing

23   that or to tack on some consecutive time.  But the guideline

24   calculation here is 20 years on each of those.  If I do keep

25   those all concurrent, then we're left with the one dealing

1   with the murder of Davis and I can either say 20 years

2   concurrent on that, or I have the discretion to say I'm

3   going to add that 20 years on consecutively or parts of it.

4   I guess that's the way the law breaks out.  And then we have

5   to have the seven-year tack-on for the gun charge.

6            So if I do run all of the Hobbs Act robberies

7   concurrently except the Davis one, we're talking about

8   240 months.  If I want to run the Davis one consecutively,

9   that would be another 240 months; that's 480 months.  Then,

10  on top of that, we have to have the 84 months for the gun

11  charge.  I think I got that down right.

12           So if we did that, we're looking at 480 plus 84.

13  Which would be 564 months.  Once again that would be

14  predicated upon 20 years concurrent for all of the

15  non-murder robberies and another 240 months for the Davis

16  one, and 84 for the, I think, it's 564 if my math is

17  correct.

18           MR. SCHNEIDER:  That would be 47 years, whatever

19  that is no months.

20           MR. ROLLE:  564.

21           THE COURT:  I think 564 is the same as 47 years.

22           MR. SCHNEIDER:  I believe so.

23           MR. ROLLE:  Yes.

24           THE COURT:  So that would be 47 years.

25           And presumably, he would get credit for good time

1   apparently so that would knock off, you know, a bunch of

2   years and he may be looking at getting freedom at about the

3   age of 70 if I calculate this correctly.  So I'm not going

4   to go higher than that.  I think anything higher than that

5   is not really appropriate especially when I compare this to

6   Kingsley Bernard.  So anyway that's my thinking.

7               MR. ROLLE:  Sure.

8               THE COURT:  But I want the Government to have the

9   opportunity to tell me why I should go higher than that and

10  want Mr. Schneider to have the opportunity to tell me why I

11  should be lower than that.  And then I have to make the

12  difficult decisions that is the most difficult part of being

13  a district court judge, okay?

14              You go first, Mr. Rolle.

15              MR. ROLLE:  Sure, your Honor.  Thank you for the

16  opportunity to be heard.

17              So in terms of this case, this defendant, situated

18  in a case you presided over and know quite well.

19              THE COURT:  I know it well.

20              MR. ROLLE:  Very well.  Certainly better than

21  anyone sitting here as the lawyers on this case at this

22  point.

23              This case is not just about the murder, the death,

24  and killing and murder of Davis during one robbery.  That

25  was a significant event, it was a significant count, a

1  significant part of the trial, his second trial before your

2  Honor.  There was a first trial and there was a reason why

3  there was two trials was because this defendant led, he led,

4  a robbery crew for more than ten years.  That fact alone

5  distinguishes him from Bernard.  Bernard certainly pulled

6  the trigger and killed a man in the course of a robbery.

7  This defendant planned and assisted and disposed of the

8  body.  This case is just not simply about that moment in

9  time and I think that's what was important.  It was

10  important to what we said in our papers.  It was important

11  to this court's sentencing 20 years ago.

12          THE COURT:  I agree with that conceptually, by the

13  way.

14          MR. ROLLE:  And I think we can't lose sight of

15  that and I think that's what justifies sentencing him very

16  much differently than Bernard at the end of the day.  When

17  you read through the PSR that came out in 2005, Bernard is

18  not mentioned as nearly as much has Myton, and that's

19  because of the role he played.  Now, the times he was

20  mentioned were quite heinous and each of those points, at

21  least on one of them, the defendant was there, right there

22  by his side which is why your Honor found him inextricably

23  intertwined with the killing that occurred.

24          But I think looking at each of robberies that

25  didn't kill anyone by themselves would absolutely support a

1   sentence of 80 years, a sentence of life.  Less than an hour

2   ago in this courthouse, Judge Chin sentenced carjackers who

3   committed one gunpoint carjacking, kidnapped one person, and

4   pistol whipped one person over the course of a year to

5   24 years, to 24 years, that happened an hour ago.

6           Over the course of more than ten years, this

7   defendant helped kidnap, pistol whip in front of a baby.

8   One of his victims was holding an 18-month old child at the

9   time that he beat the mother over the face with a gun; beat

10  the father over the face with a gun.

11          The conduct recounted in the PSR is some of the

12  most shocking conduct you can conceive of.  The bad old days

13  of New York City were here because Rasene Myton brought

14  everyone to it.  He was captaining the ship in the '90s.

15  These are the Hobbs Act robbery crews of the Southern

16  District of New York and Eastern District of New York

17  brought time and time again these heinous and violent

18  robberies and that can't be overlooked.  And the reason it

19  still supports it today is that the 22-year sentence they're

20  asking you for is totally at odds with every §3553(a)

21  factor, the rehabilitation on which it's built is not

22  existent and does not compare to Kingsley Bernard.

23          THE COURT:  We have a very compelling letter from

24  the prison and -- who is this gentleman again?  I don't

25  remember what his position was, but the Lieutenant Watson.

*Resentencing*                                                    19

1        MR. SCHNEIDER:  So, your Honor, in our mitigation

2   submission there's several attachments.  Attachment C is a

3   letter from Liston Watson who was an inmate at FCI Berlin

4   where Mr. Myton has been several years.  So he wrote a

5   letter to the Court that you received separately, but I also

6   attached it.

7        THE COURT:  I saw that.  But he's an inmate.

8        MR. SCHNEIDER:  He's an inmate.  I've also

9   attached three letters from employees he the Bureau of

10  Prisons --

11       THE COURT:  Right.

12       MR. SCHNEIDER:  -- as Attachment D to our letter.

13       MR. ROLLE:  So we recognize, your Honor --

14       THE COURT:  I assume that's part of §3553(a) mix

15  those letters.

16       MR. ROLLE:  And I think worth almost nothing.

17  Because at the end of the day, the fact that he treated well

18  the people charged with keeping in him in custody and didn't

19  attack or brutalize the inmates he was housed with.  Should

20  he have shown such compassion to the victims, he wouldn't be

21  here.  But he did and I don't think not -- I don't think

22  complying with what you're expected to do in custody is

23  worth 60 less years than your Honor imposed.  A sentence

24  less than he asked you for in 2005 when they said 25 years

25  was enough.  It wasn't enough then, it's not enough now.

1          THE COURT:  I think he was assessed as a low risk

2    of recidivism.  I read something about that.

3          MR. ROLLE:  Understood, your Honor.

4          I think that's not the entire sentencing calculus.

5    I'm also not quite sure what we can really say.  I'm not

6    sure the sample size of offenders with this type of

7    underlying crime really can be borne out in a matrix that

8    they've cited to you.  I think he is so unique in the level

9    and scope of the underlying robbery crimes that he can't be

10   analogized to other people in the matrix.  There are not

11   people in the United States going back to the '90s who

12   committed crimes like this.  It's a select group of people

13   prosecuted in the Second Circuit, in the Southern District

14   and Eastern District of New York.

15         THE COURT:  So let me interrupt, also.

16         I'm thinking about Bernard.  He was a poster child

17   for an extraordinary rehabilitation while he was

18   incarcerated.  I think everybody agreed to that, I think.

19   The Government agreed that was extraordinary, right?  And

20   so, that was a major §3553(a) factor, so there's no question

21   about it.  I don't think he measures up to that bar here,

22   quite frankly.  But I have to consider this as part of the

23   matrix, as part of the farrago, my new favorite word, of the

24   sentencing dynamics under §3553(a).  I'm not saying it's

25   going to be a dominant one but certainly it's worthy of some

1    consideration I suspect, okay?

2         MR. ROLLE:  Your Honor, as to Bernard.  I've been

3    speaking with the counsel who handled the sentencing, and I

4    think reflected in our letter, we asked for a guideline

5    sentence which I think recognized and accounted for the

6    rehabilitation.  I think we're doing the same thing here.

7         THE COURT:  The other thing that strikes me is

8    that all these other terrible people:  Padmore, I remember

9    all of them.  Who was the cop again that was involved here?

10   Maybe it was more than one.  They're out, they're all

11   sentenced over the course of years and I think they all

12   have -- I think they're all free people today.  I don't

13   think anybody else in is in jail.  The sentences ranged,

14   they're all individual sentences, but he's the number one

15   guy.

16        MR. ROLLE:  I think Francisco Lake.

17        THE COURT:  Lake is still.

18        MR. ROLLE:  You amended his sentence but he has

19   many years to serve.

20        THE COURT:  Lake is still there?

21        MR. ROLLE:  Yes.

22        THE COURT:  Aside from Lake.  Lake and Myton were

23   the ones who really, I guess, for lack of a better word,

24   were the major criminal activists here in so to speak.

25        MR. ROLLE:  Certainly, over the timeline that we

1   have to look at.  I think we could go incident by incident

2   and say, well, I stayed in the car.  Well, I didn't bind his

3   hands, I only drove away.

4          THE COURT:  He was inextricably involved with a

5   lot of bad things over a long period of time.  That's why

6   his sentence is going to be higher, and has been higher,

7   than all the others possibly with the exception of Lake.

8          MR. ROLLE:  Yes.  And just to underscore a point

9   we made in our letter.  And I think this is important, and I

10  think it's salient, and I think it's unusual.  We certainly

11  don't take issue with someone fighting their convictions and

12  attempting to take advantage of changes in law and different

13  judges' perspectives on what is a crime of violence and all

14  these esoteric exercises we do as lawyers.  But it does

15  inform you as to what was his perspective on what he had

16  done and his acceptance of responsibility.  What were the

17  arguments he made to your Honor in seeking to unwind his

18  sentence?

19         And I looked as closely as I could to as many

20  filings as I could from over the last 20 years in this case,

21  he has almost nine dockets in the Second Circuit, he has

22  four dockets in this district court, littered with filings.

23  At no point does he reflect upon what he did, acknowledge

24  what he did.  And you may say, well, he's litigating legal

25  points and why would he say that.

1          But the arguments he made were ones like:  I

2    shouldn't be held responsible for Orlando Davis's killing.

3    He made that argument less than a few years ago where he's

4    still continued to say:  It's not my problem.  That's

5    relevant.  That is incredibly relevant to understand.  Has

6    he accepted responsibility and understood the harm he's

7    caused to this world and this city.  I know he's said it in

8    a letter from a month ago, but what about the 70 letters

9    before then to judges across the Circuit and to your Honor.

10   Not a hint.  And that's a relevant §3553(a) factor and

11   specifically relevant to rehabilitation.

12          Someone who sat for 20 years and thought:  I

13   really screwed up.  I destroyed a lot of lives.  There's a

14   lot of rehabilitation.  There's a lot of bringing together

15   you can seek to do.  Apologies one could make.  Making

16   amends.  That didn't happen, it hasn't happened.  And that's

17   relevant at the end of the day, your Honor.

18          THE COURT:  So, look, you see I agree mostly with

19   what you say but I still have to come to a number here and

20   that's what makes this job kind of difficult.

21          So, Mr. Schneider, I don't know whether I can find

22   a reason for giving him less than 564 months based on

23   everything we've spoken about, and there may be a compelling

24   argument to give him more than 47 years.  It's your turn to

25   try to convince me that I should not run the so-called -- is

1     it Count Six, is that the one that deals with the murder?

2          MR. SCHNEIDER:  It was Superseding Indictment Six,

3     Count Four.

4          THE COURT:  We're dealing with Count Four?

5          MR. SCHNEIDER:  Count Four.

6          THE COURT:  I got to keep the numbers straight to

7     make sure I don't mess up.  Mike is going to make sure I'm

8     getting it down right.

9          So the question is:  Given the full 20 years on

10    that consecutively, or do I want to give more than 47 years.

11    I can do that, I have all this discretion here to run the

12    consecutive, concurrent.  We have to come up with a number

13    and we can technically figure out how we want to carve it

14    up.

15         But it just seems to me that he was the main

16    honcho here, so to speak, or certainly one of them.  And

17    compared to Bernard, he doesn't compare to him because

18    Bernard was the poster child of rehabilitation and

19    everything else that really motivated me to give him

20    21 years, basically.

21         So the floor is yours.

22         MR. SCHNEIDER:  Thank you, Judge.

23         You know, when I came in here today, I was

24    prepared to talk about the change that Mr. Myton made when

25    you sentenced him 18 years ago.  And I disagree with you.

1    He has exhibited extraordinary rehabilitation and I will get

2    to that.  But I've got to respond to the Government's

3    arguments which I find some of them ridiculous.  And I'm

4    going to say this because nothing makes me personally more

5    angry in this courthouse than people getting sentenced to

6    90 years, life, because they chose to go to trial.  This was

7    called "The Padmore Robbery Crew."  Padmore was a leader.

8    He pled guilty, he got 36 years.  You know why he's talking

9    about Mr. Myton should get 47 or 80 because he chose to go

10   to trial.

11              THE COURT:  Let me interrupt you.

12              You know that I am very keen on being concerned

13   about what we called the "Trial Tax," I've written about it.

14   I don't think Padmore was involved in the murder of Davis,

15   if I recall correctly.  I know he did a lot of bad things.

16   There's a lot of robberies, a lot of holdups.  These were a

17   lot of drug-related people we talk about.  We have the loss

18   of life here which I think distinguishes him from Padmore.

19              MR. SCHNEIDER:  I don't have Padmore's PSR.  My

20   understanding that there were three murders that he may have

21   been involved with.  But I don't have that information, I

22   didn't try this case.  But I will say this:  The Government

23   tries to paint Mr. Myton as a leader of this crew.  It was

24   the Padmore Crew.  Your Honor didn't give him aggravating

25   role adjustment here as leader when he got sentenced.

1           And as I read this PSR, the probation officer

2    seemed to make pains, the original probation officer in

3    2002, take pains to say this was not your usual top-down

4    crew.  This was a diffuse group of people who would find out

5    where there was drug dealers who could be robbed and they

6    would put together a crew and they would do the robbery.

7    And they didn't seem to think anything was leader except for

8    Padmore.  I'm not even getting into the police officers here

9    who, as far as I understand, their dockets are partially

10   sealed didn't see a day in jail.

11          So the leader of this crew or the ostensible

12   leader got 36 years because he pled guilty.  And if my

13   client had pled guilty, he likely would have gotten

14   25 years.  That's what I think.

15          THE COURT:  It's hard to predict that.  But there

16   is certainly a justifiable basis to sentence somebody after

17   they've been convicted compared to when they plead.

18          MR. SCHNEIDER:  Sure.

19          THE COURT:  But there is a limit to that because

20   it leaves as a point where it would be too punitive based

21   upon what we call the "Trial Tax."  I get it.

22          MR. SCHNEIDER:  I understand that.  And, look, I

23   don't -- obviously, and I'm all defense counsel know this

24   and the Court knows this, if you're going to sit through a

25   trial and you're going to hear the evidence and understand

*Resentencing*                                              27

1    what happened in that way, it's different than reading a

2    presentence report and sentencing somebody.  That's obvious.

3    You know --

4           THE COURT:  Let me interrupt.

5           I don't have any record of whether there was an

6    offer that was made and turned down.  But who knows, it's

7    hard to go back 20 years.

8           MR. SCHNEIDER:  Sure.

9           THE COURT:  It may well have been an offer that

10   was a very good offer that he turned down, I don't know.

11          MR. SCHNEIDER:  I don't know the answer to that

12   either.  Obviously, I didn't represent him at the time.

13          THE COURT:  The thing that sticks out, once again,

14   this is a prolonged period of criminal behavior.  It was

15   really one-third of his life or more at the time that, you

16   know, he was finally caught and he basically fit the profile

17   of an everyday criminal. It wasn't like a one- or two-year

18   type of thing.  It wasn't anything that was unusual in terms

19   of the person's otherwise aberrational life, right?  He was

20   a career criminal and I a wanton criminal.  And that was

21   something I remember way back which impressed negatively.

22          Go ahead.

23          MR. SCHNEIDER:  I understand that, Judge.  And I

24   understand that is likely the thing that may differentiate

25   him from his brother Kingsley Bernard.  The length of

*Resentencing*                                        28

1   involvement in the robbery crew.  Those are the facts of the

2   case.

3          But the question now, taking Mr. Myton as he sits

4   here before you in 2023, as to what do the §3553(a) factors

5   inform you, tell you to do?  And you hit on some of those.

6          First of all, my client has served the equivalent

7   of a 25-year sentence.  He's done 22 years.  As you noted

8   with good time, he'd probably get three years off of that.

9          So he served the equivalent of about 25 years

10  which is a significant sentence.  It's not as if he hasn't

11  been punished and the Court obviously has to consider

12  punishment as part of the§3553(a) factors.  But punishment

13  has been imposed and I will say part of that it is in a

14  penitentiary.

15         But because of my client's extraordinary

16  rehabilitation, he was able to move to a medium security

17  prison in New Hampshire, FCI Berlin.  And I really take -- I

18  differ greatly with the Government about what is

19  extraordinary rehabilitation.

20         Mr. Myton, as far as he understood it, was likely

21  to spend the rest his life in prison.  Despite that, he did

22  everything right.  He has these three minor disciplinary

23  incidents over 22 years.  I sent you letters from three

24  separate corrections officers, one of them who calls him a

25  role model.  And it's not the for the Government to say just

*Resentencing*                                              29

1   doing what you're supposed to it is not rehabilitation is

2   just belied by facts that we all know.

3          We all know that many of the people who come

4   before this court have tens of disciplinary incidents over a

5   much shorter time.  They can't get along in prison.  And

6   really people who go to prison, especially someone like

7   Mr. Myton, who thinks he's never going to get out makes a

8   decision, right?  And that decision is:  I'm going to learn

9   something, however long I'm in this prison for the rest of

10  my life.  I'm going to learn something, I'm going to do the

11  right thing.  I'm going to change my life which is what he

12  did.

13         Lots of people; in fact, I would say the majority

14  of people who get a sentence like that don't do that, right?

15  And they spend that time in jail trying to get over.  You

16  can make money in jail, you can use drugs in jail, you can

17  sell drugs in jail, you can do all those things.  Mr. Myton

18  never once did any of that.  He changed his life.  His

19  letter to you explained that.  I explained that in my letter

20  he's going to speak to you in a minute to explain that.  It

21  is extraordinary rehabilitation.  For somebody who never

22  thinks they're going to get out of prison to do everything

23  he can to make his life better.

24         You can see in the audience his family.  It's not

25  often that somebody who thinks they're going to do life can

1    have that contact with his family and keep them in his life.

2    Lots of those people get written off.  And that's not

3    because of the family so much but because of the person who

4    can't really deal with keeping contact with the outside

5    world with keeping their life alive.

6              So it's not just what Mr. Myton did after you

7    sentenced him while he was in prison for 22 years, it's that

8    he did it understanding that he likely was never going to

9    get out of prison.

10             And I have to say something about the Government

11   mentioning Mr. Myton's litigation before this and other

12   courts.  I have to say this.  I get the bounces, Judge, and

13   I know you get lots of §2255s and you get a lot of motions

14   that you think are probably frivolous.  And I get the bounce

15   when my clients file those and I see them.  And every time I

16   get those bounces, I'm like, good for him.  And I don't say

17   "good for him" because he should be wasting the Court's time

18   or because I think that motion has a chance of success.  I

19   say it because somebody who is doing that is using their

20   prison time as constructively as they can.  The one thing

21   that can't stop me from doing in prison is going to the law

22   library researching and writing.

23             So, yes, and I'm not necessarily talking about

24   Mr. Myton here, lots of prisoners send frivolous motions to

25   the Court.  But when they're doing that, they're sort of

1    exercising the only responsible way to use their time that

2    they're allowed in a prison.  Like you can't hold it against

3    a guy --

4              THE COURT:  Wait a second.  I don't hold it

5    against him at all.

6              MR. SCHNEIDER:  I know you don't.

7              THE COURT:  I look over these things.  We wrote

8    extensively in each of his applications.  None of them said

9    they were frivolous.

10             MR. SCHNEIDER:  The Government did.

11             THE COURT:  Well.

12             MR. SCHNEIDER:  The Government did in their

13   letters.

14             I'm just saying, whenever I see one of those I'm,

15   like, good for Mr. Jones; good for Mr.  Smith, he's using

16   his time in prison constructively.  Maybe it's not -- maybe

17   I don't think it's going to work and usually it's not, but

18   that means somebody is going to the law library and spending

19   their time reading and writing rather than all the other

20   things you can do in prison.

21             THE COURT:  Well, I don't take the position that

22   these are frivolous applications.

23             MR. SCHNEIDER:  Thank you, Judge.

24             THE COURT:  Somebody's in jail for the rest of his

25   life has every right to try to really bring to the attention

1    of the Judge and the justice system such as it is of what he

2    things is wrong and we dealt with him seriously.

3            MR. SCHNEIDER:  I agree with that.  My point is

4    simply to reject the Government's argument that displays a

5    lack of acceptance of responsibility.

6            MR. ROLLE:  That's not our argument, your Honor.

7            THE COURT:  I don't think they're really saying

8    that.  Let's move on to something more substantive.

9            MR. SCHNEIDER:  Okay.  Mr. Myton is 52 years old

10   and you mentioned we were speaking to the Government.  I

11   think his record in prison, his age, his criminal history at

12   the time of the offense.  And I have to say this, Judge, you

13   know when you sentenced him, the one thing, when I read the

14   transcript, that stuck out at me is you really seem to focus

15   on detaining him because he was a danger.  Like, the

16   specific deterrence part of §3553.  And you said at the

17   time, I think you have to be locked up to protect the

18   public.

19           I don't think that's the case anymore, I think

20   he's proved that.  And I think you should feel secure that

21   he could be released and he'd never come before you again.

22   He'd never commit another crime.  Somebody does not do

23   22 years in prison, following all the rules as he has, doing

24   all of the programs, keeping contact with his family if he

25   hasn't changed.

*Resentencing*                                                          33

1        So, you know, I wrote in my letter, yes, he had

2   that period of criminality.  And I sort of tried to convey

3   why that started and it's not an excuse.  His sister got

4   kicked out of the house, he decided to go with her.  He was

5   18 years old, he was looking to help her and he started

6   committing petty crimes and got hooked up with this Padmore

7   Crew and he eventually came before you and got sentenced to

8   90 years in prison.

9        So he made all these terrible decisions and he

10  decided to victimize those people and you gave him a

11  sentence for that.  But when you gave him that sentence, he

12  had another decision to make and, at that point, he made the

13  right decision.  He was 30 something years old at the time.

14  He's 52 now, he's done everything right.  He could be

15  released without posing a danger to anybody, I think the

16  record reflects that.  I think the other §3553(a) factors

17  warrant a sentence -- and I heard you that you're not going

18  to give him time served, I understand that.  But I think the

19  sentence of 27 years, which would be a concurrent sentence

20  on the robbery counts, plus the seven that you believe

21  applies for the §924(c) is well more than sufficient to

22  serve the interest of justice.

23        General deterrence will certainly be served.  That

24  is a significant sentence.  The median sentence for robbery

25  in federal courts in the last year was only 22 years.  It

*Resentencing* 34

1  was less than 25 years. I'm sorry, for murder, that's for

2  murder offenses. So it's not as if giving him the sentence

3  that we requested would be some sort of gift.

4  THE COURT: I'm always troubled by this, you know,

5  sort of statistics that's tossed out at me that the median

6  sentence for murder is 22 years or 24 years because it

7  really doesn't tell me a lot, you know, because there are

8  murders that require people to be in jail for the rest of

9  their lives and those that maybe they could be released much

10  earlier. They're so fact specific, but we have this general

11  norm here which I don't pay so much attention to, by the

12  way.

13  MR. SCHNEIDER: I understand what you're saying,

14  and obviously, you know, it's difficult to inform yourself

15  about comparative offenses that you don't know, you don't

16  know the circumstances. But it is true that as I started

17  off saying here that Mr. Padmore who led this crew, who had

18  the police officers giving him information, got 36 years.

19  And my client sits here, I believe, because he went to

20  trial, chose to go to trial. And I don't want to talk about

21  the Trial Tax, I calmed down since I first started talking

22  to you, Judge, but a 27-year sentence is certainly more than

23  sufficient to serve the interest of justice.

24  I will just say this: My client, should he be

25  released in this country which is unlikely, it appears I

1    think he's going to go into immigration custody and likely

2    to be deported to Jamaica.  But if he was released in this

3    country, his family is there to support him.  They have a

4    room for him.  A person who is willing to give him a job is

5    in the audience.  He has set up his life to move forward.

6              THE COURT:  Yes.  So he's not a citizen, I take

7    it, and I think he's subject to deportation from what I

8    read.  He may not be deported, but that also is a §3553(a)

9    factor which I guess I ought to consider as well.

10             MR. ROLLE:  I think he can.  I just wanted to

11   heard on a few points from Mr. Schneider's arguments to your

12   Honor but only if he's finished.  I don't know if he's

13   finished.

14             MR. SCHNEIDER:  Depending on what you say I'm

15   finished.

16             MR. ROLLE:  Okay.  I think the main point is this

17   idea of a Trial Tax couldn't be more irrelevant as we sit

18   here today.  As we recognize, we started this proceeding not

19   a single person sitting on this side of the dais was here.

20   I certainly wasn't a lawyer.  The people who tried this case

21   are special counsel to the United States, private

22   practitioners at this point.  And having -- know nothing

23   about the case, we here are in the best position to give you

24   a sense of what is -- what are we doing here de novo and

25   reading these facts.

*Resentencing*                                                    36

1        THE COURT:  There are situations which trouble the

2   Court about, you know, disproportionate sentences because

3   somebody went to trial.  I don't see it as this type of

4   case.

5        MR. ROLLE:  I agree.  My point is only it is

6   certainly not the case that the argument we're making to

7   your Honor has anything to do with that.  Having not sat

8   through the trial or known anything other than the cold

9   record and facts displayed here.

10       THE COURT:  There are better Trial Tax cases than

11  this one.

12       MR. ROLLE:  And our reaction to it is same as it

13  probably was to your Honor having sat through it originally.

14  And that is the core of what we're asking for and I think

15  punishment is quite an important factor today.  I think the

16  rehabilitation outlined by Mr. Schneider is important, we

17  recognize it.  We're happy to hear that.  I think it can be

18  accounted for.  It does not justify a 22-year sentence, a

19  25-year sentence, or a 27-year sentence.  It just simply

20  does not.

21       THE COURT:  Now, let me get this down straight

22  before I ask Mr. Myton to speak.  I just want to make sure

23  with all these charges out there that I have the right

24  combination.

25            Count One is early 240 months.  Counts Two and Six

*Resentencing*                                                37

1   are also 240 months.  And the three and five are out, we

2   know that.

3          What is the one that is implicated with the Davis

4   murders?  That's seven?

5          MR. SCHNEIDER:  That's Count Four of Superseding

6   Indictment Six.

7          THE COURT:  That's Count Four.

8          So then you would have Counts One, Two, Six and

9   Seven within the Hobbs Act robberies that would be each the

10  20-year concurrent time?

11         MR. ROLLE:  Not Seven, your Honor.  Seven is the

12  firearms count.

13         THE COURT:  Let me get that right.  It's One,

14  Three -- One, Two.

15         MR. ROLLE:  Six.

16         THE COURT:  Six, Seven.  And Seven, right?

17         MR. ROLLE:  S-4, Count One; S-4, Count Two; S-4,

18  Count Six.

19         And then the second indictment which involves

20  Davis robbery is S-6, Count Four.

21         THE COURT:  Was what?

22         MR. ROLLE:  Superseding Indictment Six, Count

23  Four.

24         THE COURT:  It was Count Four, yes.  That's the

25  one that -- what about Count Seven?

1          MR. SCHNEIDER:  Count Seven is the §924(c) count

2   on the Superseding Indictment Four.

3          THE COURT:  So we're talking about One, Two, and

4   Six, basically, right?

5          MR. ROLLE:  Yes.

6          THE COURT:  And then we have the Four is the one

7   that involves Davis, right?

8          MR. ROLLE:  Correct.

9          THE COURT:  And the Seven is the tack-on for

10  either Five or Seven years.

11         MR. ROLLE:  Correct.

12         THE COURT:  After 29 years here, sometimes you get

13  a little confused.

14         MR. SCHNEIDER:  It's always confusing, Judge.

15         I just want to make clear that, obviously, this

16  court has the discretion not only to impose the

17  robbery-related counts concurrently, but also to impose any

18  term of imprisonment between zero and 20 years.  You don't

19  have to give him 20 years, that's obvious, I assume, to the

20  Court.  But it's been discussed as if some 20-year sentence

21  is mandatory, that is not accurate.

22         THE COURT:  I can run One, Two, Six, and Four all

23  20 years concurrent if I wanted to.

24         MR. SCHNEIDER:  Correct.

25         THE COURT:  But you add the 84 months on Count

*Resentencing*                                                    39

1    Seven if I wanted to.

2              MR. SCHNEIDER:  That's correct.  But you could

3    also impose --

4              MR. ROLLE:  You could give him zero.

5              MR. SCHNEIDER:  Five years for each and run them

6    concurrent or consecutive.  I'm saying 20 years is not --

7    that's the statutory maximum.

8              THE COURT:  That's not maximum.  I think what're

9    what concerned about is the total number, however we get

10   there.

11             MR. SCHNEIDER:  Absolutely, I agree.

12             THE COURT:  Let me hear from Mr. Myton now.  I

13   mean, we've had a fulsome discussion here.  This is how I

14   like to conduct sentences.  I don't know how my colleagues

15   do it.  But to me this is the important thing that we get

16   caught up in the numbers and stuff like that.

17             So I appreciate the fact that you had the

18   opportunity to speak to me.  I come into court, I don't have

19   the sentence down pat, I don't do that.  So these things are

20   very important.  I mean, I have these discussions and to

21   listen to everybody.

22             Mr. Myton, I don't hold it against you that you

23   have been a frequent visitor to Judge Block in terms of your

24   applications.  I think a lot of them were well thought out,

25   quite frankly.  I think you know we treated this seriously

1    even though he were not successful.  We wrote extensively on

2    this.  You were caught up in this matrix in terms of the

3    Supreme Court and the higher authorities trying to figure

4    out what to do with whether an attempted robbery was a crime

5    of violence or not.  And a lot of these things were held in

6    abeyance until we finally got that sorted out.  But the way

7    it worked out finally is that, yes, robbery is a crime of

8    violence.  Attempted robbery is not a crime of violence.

9    And then I have recently wrote the Second Circuit affirmed

10   my Taveras case which said conspiracy is a crime of

11   violence.

12          So it's really a matrix of things here but we

13   finally got the law straight and you're going to be the

14   beneficiary of the fact that the Supreme Court and the other

15   courts have now sorted all that out.  So you're not going to

16   be held responsible for Counts Three and Five, okay?

17          Now, having said all that, you know exactly what

18   my concern is, I don't think I have to repeat it, but this

19   is your opportunity to speak to me before sentence is

20   imposed.

21          THE DEFENDANT:  Thank you, your Honor.

22   18 years old I stood before you at sentencing.

23          THE COURT:  Try to speak up as loud as you can.

24          THE DEFENDANT:  18 years ago, I stood before you

25   at sentencing.  You asked me if I had anything to say.  I

1  said I did not.  At the time, I truly did not have anything

2  to say.

3          Today, 18 years later, I feel I have a lot to say.

4  Not just to this court but to the victims and their family.

5  If I could go back to time and undo the pain I have caused,

6  I would but that is not wait life is.  All I can say is that

7  I am truly sorry for pain and the suffering that I have

8  caused.  I know saying "I'm sorry" does not undo the damages

9  that have already been done but I hope it can help heal some

10  of the pain.

11          The person that was convicted 22 years ago is not

12  the same man standing before you today.  The day you

13  sentenced me, your Honor, I was not bitter or angry, nor did

14  I disrespect you with angry outbursts or obscene language.

15  Though I knew I was going away to prison for the rest of my

16  life, in that moment I did not see myself going to prison

17  but rather going away to college.

18          Shortly, after arriving at USP Lee, I had an

19  epiphany one night while I laid on my bunk.  I recall a

20  Serenity Poem I read.  The first line says, God grant me the

21  serenity to accept the things I cannot change.  At that

22  moment, I realized there is absolutely nothing I can do

23  about my situation.  The second line:  The courage to change

24  the things I can.  So I decided to change, to throw the old

25  me in the trash and remake myself into a better man.

*Resentencing*                                                    42

1   Thankfully with the hope of others, I was able to do that.

2   And the third line says:  And the wisdom to know the

3   difference.

4           By understanding that I began to realize the

5   damages and the pain I was inflicting on others.  Not just

6   the physical pain but the emotional pain as well.  Not just

7   on the victims but on my own family as well.  My sister's

8   never ending support was pivotal in my change for the

9   better.  Seeing the pain in her eyes whenever she visited me

10  in prison was often unbearable at that times.  Also not

11  seeing my daughter Cheyenne and nieces Tisha and Melissa,

12  both were teenagers and graduating high school, and

13  especially my younger daughter Alexis now 22 about to

14  graduate college in May whom I haven't seen since she was

15  four years old and me not being there to witness it is like

16  an unbearable weight sitting on my heart.  It helped

17  motivate me to be better, not just for me but also for them.

18          Through the grace of the creator, I was able to

19  surround myself with people who guided me on how to better

20  myself.  I learned how to conquer my situation, to not get

21  lost in the system like other inmates I see getting high all

22  the time, involved in violent altercations, just the cost of

23  being incarcerated.

24          I became a master of my faith.  So to be

25  completely honest, your Honor, I am grateful for the

*Resentencing*                                                     43

1    experience.  Not that I like being in prison but the

2    experience has allowed me to grow and really understand

3    myself and the pain I was causing others.

4            It also made me realize that the most important

5    things in life; that is, God, family, and freedom.  No one

6    should take the either for granted like I did.  No one truly

7    understands the importance of these things until they're

8    taken away.  Fortunately, I was able to learn and understand

9    the importance of God, family, and freedom.  A lot of people

10   cannot say the same.

11           So as I stand before your Honor, I am humbled by

12   the experience.  I am truly sorry and I offer my sincerest

13   apologies to you for putting you in a position to pass

14   judgment on me 18 years ago.  I hope and pray that you can

15   see that I am not that man anymore and grant me the

16   opportunity to prove to you that you can give me another

17   chance.

18           Thank you, your Honor.

19           THE COURT:  Thank you, Mr. Myton.

20           I'm going to take a little bit of a recess and I

21   will be back in about ten minutes or so.

22           (Defendant exits from courtroom at 1:09 p.m.)

23           (A recess in the proceedings was taken.)

24           (Defendant enters the courtroom at 1:22 p.m.)

25           THE COURT:  First, I want to thank counsel of both

*Resentencing*                                                    44

1  the Government and Mr. Schneider for your excellent

2  assistance.

3          This is not easy.  I need all the help I can get

4  and I appreciate your efforts that you made to help Court

5  come to these difficult decisions.

6          So the total amount of months is going to be

7  456 months and that's going to be divided as follows:

8          Counts One and Two and Six is 240 months each to

9  run concurrently.  And on Count Four, it's also going to be

10  240 months, but there will be 132 months that will be

11  consecutive.

12          On top of that, and in respect to Count Seven,

13  there will be an additional 84 months.  And I just want the

14  record to note that I would have imposed the same 84 months

15  even if I did not believe that that was the mandatory

16  minimum.  I think it's warranted in any event.  So the

17  record should reflect that.

18          So if the calculation is correct, that means it

19  should all up add up to 456 months.  Check it.  I try to be

20  careful with the math but these are tricky things.

21          Three years' supervised release on each count to

22  run concurrently.

23          The standard conditions of supervised release are

24  the same as they were before.  That will also be part of the

25  judgment here.

*Resentencing*                                    45

1          We already said there will no fine that continues.

2          We have dealt with the special assessment.

3          You're going to let me know how you folks want to

4    deal with that and I think that's about it.

5          Is there anything I may have stubbed my toe on or

6    I may have inadvertently missed?

7          MR. ROLLE:  No.  As to the special assessment I

8    think as part of the judgment, the $500 is imposed.

9          THE COURT:  $500 will be the special assessment.

10         MR. ROLLE:  On the back end of the sentence

11   satisfies.

12         THE COURT:  You let me know what you want me to do

13   with that maybe we can possibly agree on that somehow.

14         MR. ROLLE:  Yes.

15         THE COURT:  Mr. Schneider, anything else that I

16   may have inadvertently messed up on, I don't think so.  It's

17   not easy.

18         MR. SCHNEIDER:  No.  I appreciate the Court's

19   attention.  During the break, I wasn't able to get into

20   PACER but I was able to verify that Mr. Padmore pled guilty

21   to three murders and was sentenced to 36 years.  So I don't

22   think that's going to change your opinion.

23         THE COURT:  There's a long history here and I

24   wrestled with it and I think I have it about right.  I take

25   into consideration everything which I thought I ought to

*Resentencing*                                                    46

1    think about.  I don't have to trot it out again but I have

2    considered the §3553(a) factors, the nature of his criminal

3    behavior against all these other things we spoke about

4    today.  I don't have to specify it again, I don't believe.

5          But I think it's a fair balance considering

6    everything and he's instead of going to be in jail for the

7    rest of life, if he behaves himself, I think he can look

8    forward to having be a free man by the age of 62 or

9    thereabouts I think.

10          MR. SCHNEIDER:  Probably in about ten years

11    according to what you've imposed.

12          THE COURT:  So I'm satisfied with the balance that

13    I've struck.  Thank you all for helping me out.  I

14    appreciate it and that completes the sentence.

15          (WHEREUPON, this matter was adjourned.)

16                         *   *   *

17                <u>CERTIFICATE OF REPORTER</u>

18
     I certify that the foregoing is a correct transcript of the
19   record of proceedings in the above-entitled matter.

20

21

22

     _____
24   Anthony D. Frisolone, FAPR, RDR, CRR, CRI
     Official Court Reporter
25